UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY HOLMES,

                    Petitioner,                   Case Number 15-13795

v.                                        Honorable David M. Lawson

DUNCAN MACLAREN,

                    Respondent.

_____/

## OPINION AND ORDER DENYING INITIAL AND
## AMENDED PETITIONS FOR WRIT OF HABEAS CORPUS

Petitioner Jay Holmes was convicted by a Michigan jury of first-degree home invasion

after he kicked in the door to his former girlfriend's home after seeing another man leave the home.

He filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge that conviction

on grounds relating to his attorney's performance, the prosecutor's conduct, and certain procedural

errors. After the proceedings were paused so that Holmes could return to state court to raise

additional arguments, he filed an amended petition raising additional criticisms of his lawyers.

Because none of Holmes grounds warrant relief via the "great writ," the petition and amended

petition will be denied.

I.

Holmes was charged in Oakland County, Michigan with one count of first-degree home

invasion, Mich. Comp. Laws § 750.110a(2)(b), and one count of domestic violence, Mich. Comp.

Laws § 750.81(2). He was tried before a jury where the evidence established that:

[t]he victim and defendant met in 2004, were involved in a romantic relationship
for eight to ten years and had one child together. With the exception of the time
when defendant was in prison, defendant and the victim lived together in various
places throughout their relationship. In the late winter or early spring of 2011, after
defendant was released from prison, defendant and the victim lived at the victim's

mother's house and defendant started helping the victim care for the child. However, defendant was asked to leave after his abusive behavior started to escalate.  At that point, the victim realized that the relationship was not going to work and she moved into her own condominium in Waterford.  Even so, defendant stayed with the victim for approximately one to two weeks after she first moved in to (sic) her new condominium.  She then told defendant that she did not want to be in a relationship with him, and did not want him to live with her.  The victim continued to encourage defendant to spend time with their son.  When he came over, he would have to knock on the door as he did not have a key and his name was not on the lease.

At about 1:00 a.m., on July 4, 2011, the victim escorted a male friend out of her condominium and then secured the door with a deadbolt lock.  She made the child a snack and took it to him in the living room.  Several minutes later, defendant kicked the victim's front door open.  He dislodged the doorframe, dented the door, and bent the deadbolt.  Defendant punched the victim in the face repeatedly and said, "[h]ow could you have him around my son?"  He grabbed her by the neck, and smashed her head against the wall, putting a hole in the wall.

*People v. Holmes*, No. 310321, 2014 WL 198925, at *1 (Mich. Ct. App. Jan. 16, 2014) (unpublished).

There was additional evidence: in letters that Holmes wrote to the victim from jail, he asked to be forgiven and tried to persuade the victim not to appear in court, or to say that he was living with her at the time of the assault so that he would not be charged with home invasion.  The only prosecution witnesses were the complaining witness and the police officer who responded to the victim's 911 call after the assault.

Holmes did not testify or present any witnesses, and on March 29, 2012, the jury found him guilty of first-degree home invasion and domestic violence.  On May 8, 2012, the trial court sentenced Holmes as a fourth habitual offender to concurrent sentences totaling 15 to 60 years in prison.

The Michigan Court of Appeals affirmed Holmes's convictions and sentence, and the Michigan Supreme Court denied leave to appeal.  *Holmes*, 2014 WL 198925, at *8; *People v. Holmes*, 497 Mich. 853, 852 N.W.2d 173 (2014).  Holmes filed a motion for relief from judgment

around the same time he filed his initial habeas corpus petition in this Court. He sought and was granted a stay of his habeas case while the state courts addressed his claims. The state trial court denied his motion, *People v. Holmes*, No. 11-238085-FH (Oakland Cnty. Cir. Ct. Oct. 6, 2016), and the state appellate courts likewise denied relief, *People v. Holmes*, No. 336318 (Mich. Ct. App. May 12, 2017); 503 Mich. 872, 917 N.W.2d 656 (2018).

Holmes then returned to this Court, the stay was vacated, and Holmes filed an amended habeas petition, which supplemented but did not displace his original filing. In the two petitions, he raised the following claims:

> I.     The trial court erred by refusing to provide him with substitute counsel.
>
> II.    The trial court erred in denying the defendant's request for an instruction on the lesser included offense of third-degree home invasion.
>
> III.   Defense counsel was ineffective by (a) failing to investigate and call witnesses who could have testified that the defendant lived with the victim, (b) failing to meet with him before trial, (c) failing to request, or object to, the jury instructions, (d) failing to request supplemental instructions on residency, and (e) stipulating to the standard jury instruction on home invasion.
>
> IV     The prosecutor knowingly and willingly used false testimony to convict him.
>
> V.     The defendant was deprived of his due process right to notice when the trial court constructively amended the information after the conclusion of the testimony and closing arguments by giving a jury instruction at variance with the amended information.
>
> VI.    Appellate counsel was ineffective for not representing him at a crucial stage of his direct appeal, that is, not presenting oral argument.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court

rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

A.

Holmes alleges first that by not adjudicating his pretrial requests for substitution of counsel, the state trial court violated his Fourteenth Amendment right to due process and his Sixth Amendment right to counsel and conflict-free representation.  On direct appeal, the Michigan Court of Appeals concluded that there was no cause to substitute counsel and that the trial court did not err by refusing to substitute defense counsel.  Holmes says that the state court's decision was based on an unreasonable determination of the facts.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "[I]mplicit in this guarantee is the right to be represented by counsel of one's own choice." *Linton v. Perini*, 656 F.2d 207, 208 (6th Cir. 1981).  But "[t]he right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney," whom he does not retain himself.  *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (holding that "impecunious defendants [do not] have a Sixth Amendment right to choose their counsel" and "have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").  Simply stated, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

When a defendant seeks substitution of appointed counsel late in the case, "he must show good cause such as a conflict of interest, a complete breakdown in communication or an

-5-

irreconcilable conflict with his attorney in order to warrant substitution." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).

It is true that "a trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Linton*, 656 F.2d at 209. But a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (internal and end citations omitted); *see also United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971) ("A motion for new court-appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court.").

Factors that courts may consider when reviewing substitution motions include "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). When evaluating the extent of the conflict between the defendant and his attorney, a court may consider whether the conflict "was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

At a pretrial hearing on Thursday, March 22, 2012, defense counsel pointed out that Holmes had requested new counsel. She then asked Holmes whether he wanted her to continue with his case and be back in court on the following Monday for trial. Before Holmes could answer, the trial court said, "I don't change counsel on the day of trial." Defense counsel then explained that she had simply wanted the record to reflect whether Holmes was agreeing with her

representation or whether he wanted to object on the record.  The court responded to defense counsel's comment by saying, "I don't even want to raise that."  Pretrial Hr'g Tr. (Mar. 22, 2012), ECF No. 14-4, PageID.321.

The issue arose again on the first day of trial when Holmes announced that he wanted a new lawyer.  The trial court reminded Holmes that it did not grant changes in counsel on the day of trial.  The court then stated that Holmes was going to trial.  Holmes tried to respond, but the trial court interrupted him three times.  Trial Tr. (Mar. 26, 2012), ECF No. 14-5, PageID.344-45.

Holmes contends that a substitution of counsel would not have delayed the proceeding, because jury selection had not begun, and the case was not scheduled for trial that day.  However, because the trial was set to begin four days later, substitution of counsel likely would have resulted in a delay.

Furthermore, the record does not reflect a conflict between Holmes and defense counsel, let alone an irreconcilable one.  At a pretrial hearing on October 11, 2011, defense counsel acknowledged several letters that Holmes had sent her with information that he wanted her to pursue.  Pretrial Hr'g Tr. (Oct. 11, 2011), ECF No. 14-3, PageID.309.  Defense counsel also stated that she and Holmes had discussed the calculation of the sentencing guidelines and that she planned to meet with him to review the guidelines again and to give him a copy of discovery materials. *Ibid*.  She explained that, on the day of the hearing, Holmes asked her whether there had been a plea offer, and she had told him that there was no offer.  *Id*. at PageID.309-310.  She tried to assist Holmes in an additional way by informing the trial court that Holmes wanted to be sent back to prison so that he could get credit on his parole violation charge.  *See id.* at PageID.312.

At a subsequent hearing in March 2012, defense counsel explained that she had asked the prosecutor for lesser charges, but her request was denied.  Pretrial Hr'g Tr. (Mar. 22, 2012), ECF

No. 14-4, PageID.317.  Defense counsel also said that she had discussed the prosecutor's plea offer with Holmes and that Holmes was not interested in the offer.  *Id*. at PageID.317-318.  Continuing, defense counsel stated that she and Holmes had discussed some witnesses that he initially wanted and that she had offered to request an adjournment of trial to subpoena the witnesses.  She explained that the prosecutor had told her that if defense counsel were to subpoena witnesses, he (the prosecutor) would add the couple's child as a witness.  When defense counsel consulted Holmes about this, Holmes informed her that he did not want the adjournment.  At the hearing in March 2012, defense counsel asked Holmes whether she had explained that correctly.  Holmes answered, "Yes, you're right.  I'm ready to go" and "ready to move on with the proceedings."  *Id*. at PageID.319.

Defense counsel then asked Holmes again whether he wanted additional time to have witnesses brought in on his behalf.  Holmes answered, "No, Ma'am."  Holmes explained that he did not want his son coming to court and hearing his parents fight and that he would prefer to go to trial without his son as a witness.  Holmes also acknowledged that he and defense counsel had discussed the possibility of a conviction even if counsel made the arguments that they had discussed.  *Id*. at PageID.320-321.

When Holmes inquired at the hearing why there were no lesser-included charges, defense counsel explained why the lesser offense that Holmes had requested did not apply.  *Id*. at PageID.327-331.  The proceeding concluded with defense counsel stating that Holmes had indicated to her that he did not want her to subpoena any witnesses.  *Id*. at PageID.335.

Although the trial court made an inadequate inquiry into the attorney-client relationship, the proceedings do not support Holmes's contention that there was a conflict of interest, complete breakdown in communication, or irreconcilable conflict between him and his attorney.  The

Michigan Court of Appeals, therefore, reasonably concluded that there was not good cause to substitute counsel.  Holmes has no right to relief on his first claim.

B.

Holmes next contends that the trial court erred by denying his request for an instruction on the lesser included offense of third-degree home invasion.  He alleges that the trial court committed plain error and violated his constitutional rights by denying his request for a jury instruction on the lesser offense of third-degree home invasion.  He says that he would not have been convicted of the greater charge — first-degree home invasion — if the trial court had instructed the jury on third-degree home invasion.

The Michigan Court of Appeals held that Holmes waived this argument because "defense counsel expressly agreed to the jury instructions."  *Holmes*, 2014 WL 198925, at *3.  A waiver ordinarily is "an intentional relinquishment or abandonment of a known right or privilege," and a determination of whether there has been an intelligent waiver of the right to counsel "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  When a defendant intentionally relinquishes and affirmatively waives a right, a claim based on that right is waived and the Court need not review it.  *See United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021); *see also Tackett v. Trierweiler*, 956 F.3d 358, 371 (6th Cir. 2020) (concluding that, because the habeas petitioner affirmatively approved the jury instructions at trial, he waived habeas review of his claim about the instructions).

Holmes argues that the state appellate court's factual determination that he waived his issue is wrong.  However, the record clearly reflects defense counsel's agreement with the jury instructions.  Moreover, as pointed out in the discussion of Holmes's first claim, when defense

-9-

counsel asked Holmes whether he wanted to adjourn the trial so that defense counsel could subpoena witnesses in his behalf and make a record that might have furnished evidence to dispute one of the elements of first-degree home invasion, he declined the invitation and stated that he wanted to go to trial. *See* 3/22/12 Pretrial Hr'g Tr. (Mar. 22, 2012) ECF No. 14-4, PageID.319-320).

The court of appeals also held that the facts of the case did not support the instruction. In reaching that conclusion, the state court pointed out that, in his letters to the victim, Holmes admitted two elements that elevated his crime to first-degree home invasion. The two elements that elevated the crime to first-degree home invasion were (1) committing an assault or intending to commit an assault; and (2) the lawful presence of another person in the home. *See Holmes*, 2014 WL 198925, at *2.

This part of the claim is not cognizable on habeas review because the Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital cases violates the right to due process. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (stating that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case"). The "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)). "Declining to grant a request to 'present a state-created, not federally required, defense is . . . at worst . . . an error of state law; and . . . . a violation of state law does not violate the Constitution.'" *Keahey v. Marquis*, 978 F.3d 474, 479 (6th Cir. 2020) (quoting *Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995) (en banc)) (ellipses added), *pet. for cert. docketed*, No.

-10-

20-1298 (U.S. Mar. 24, 2021). Holmes has no right to relief on his claim about the trial court's failure to instruct the jury on third-degree home invasion.

The Michigan Court of Appeals reasonably rejected Holmes's claim as waived, and its application of the facts was not unreasonable.

### C.

Holmes also contends that his trial counsel was constitutionally ineffective in several instances, including her supposed failure to request, or object to, the jury instructions, her failure to request supplemental instructions on residency, and her stipulation to the standard jury instruction on home invasion. Holmes also argues that defense counsel failed to investigate and call witnesses who could have testified that the defendant lived with the victim and failed to meet with him before trial.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

1.

The Michigan Court of Appeals did not address the claims that defense counsel performed deficiently by not asking for certain jury instructions on home invasion. However, the factual predicate for the instructions that Holmes now believes should have been given depended on additional witnesses being called and testifying. That argument, therefore, dovetails into Holmes additional contention that defense counsel failed to investigate and call witnesses. He says that his

trial attorney should have investigated and called witnesses who would have proved that he was innocent. He alleges that he wrote letters to defense counsel and that, on October 11, 2011, he gave her a witness list with phone numbers. He also contends that some witnesses tried to contact defense counsel, but she did not answer the phone or return their calls. Holmes also denies telling defense counsel that he did not want any witnesses.

The state court of appeals addressed this issue in its waiver discussion. That was a reasonable conclusion. As pointed out in the discussion of Holmes's first claim, when defense counsel asked Holmes whether he wanted to adjourn the trial so that defense counsel could subpoena witnesses in his behalf, he declined the invitation and stated that he wanted to go to trial. Pretrial Tr. Hr'g (Mar. 22, 2012), ECF No. 14-4, PageID.319-320. By expressly relinquishing his right to have defense counsel subpoena and call witnesses, Holmes waived review of his claim that trial counsel was ineffective for failing to investigate and call the witnesses. The Michigan Court of Appeals reasonably rejected Holmes's claim as waived, and its application of the facts was not unreasonable.

2.

Holmes alleges next that defense counsel was ineffective by failing to communicate with him before trial. Holmes contends that defense counsel's ineffectiveness amounted to a lack of counsel and that the lack of communication prejudiced him because he was unable to discuss trial strategy with counsel or decide how to approach the case. He further alleges that, but for defense counsel's ineffectiveness, the result of the proceeding would have been different.

The Michigan Court of Appeals disagreed with Holmes's argument on direct appeal. The court stated that automatic reversal was not warranted because Holmes was not completely deprived of the right to counsel at any critical stage of the proceeding. The court also stated that,

even if defense counsel's pretrial meetings with Holmes fell below an objectively reasonable standard, any failure to spend additional time with Holmes did not prejudice him.

A defense attorney's ineffectiveness can amount to no counsel at all only where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone*, 535 U.S. 685, 696 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). "But the presumption of prejudice applies only when there is a *complete* denial of counsel, or when counsel *entirely* fails to subject the prosecution's case to adversarial testing." *Coleman v. Bradshaw*, 974 F.3d 710, 720 n.4 (6th Cir. 2020) (citations omitted). "A petitioner is not entitled to a presumption of prejudice because his counsel was deficient 'at specific points' of the proceeding." *Ibid.* Here, defense counsel was actively engaged in representing Holmes. Prejudice is not presumed, and the Court is guided by the standards set forth in *Strickland v. Washington*.

It is well established that defense attorneys have "a duty to discuss potential strategies with the defendant," and "to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." *Florida v. Nixon*, 543 U.S. 175, 178, 187 (2004). But "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy,* 461 U.S. 1, 11 (1983). "[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).

Holmes admits that he saw his attorney when she was appointed to represent him, at his preliminary examination, once at the jail for ten minutes, at the pretrial hearing on October 11, 2011, and at the final pretrial hearing on March 22, 2012. *See* Pet. (ECF No. 1, PageID.41).

Although Holmes insinuates that he did not have enough time to discuss his case with defense counsel, the facts were not complicated, and there were only two trial witnesses.

Moreover, the number of times that defense counsel visited Holmes and the length of her visits is not necessarily indicative of deficient performance.  As stated in *Easter v. Estelle*, 609 F.2d 756 (5th Cir. 1980), "the brevity of time spent in consultation, without more, does not establish that counsel was ineffective."  *Id*. at 759.  Therefore, it is not enough to show that defense counsel only met with the petitioner a few times before trial "as long as counsel devoted sufficient time to insure an adequate defense and to become thoroughly familiar with the facts of the case and the law applicable to the case."  *Id.*

The record before the Court indicates that defense counsel was attentive to Holmes's concerns.  Although she may not have communicated with Holmes as often as he would have liked, she acknowledged the letters that Holmes had sent to her with information that he wanted her to pursue.  She also discussed the possibility of a plea offer with Holmes, she requested lesser charges on his behalf, and she consulted him about the possibility of calling witnesses.  Additionally, as the Michigan Court of Appeals pointed out, "[d]efense counsel came prepared for trial, had knowledge about the facts of the case, offered to call witnesses, presented a defense, and cross-examined the victim."  *Holmes*, 2014 WL 198925, at *8.

Holmes has not established that his attorney's failure to consult with him amounted to deficient performance or that her conduct prejudiced the defense.  The state appellate court's finding that Holmes was not denied effective assistance of counsel was objectively reasonable, and Holmes has no right to relief on this claim.

3.

Holmes's sixth habeas claim alleges that his trial attorney was ineffective for stipulating to the standard jury instruction on home invasion.  According to Holmes, trial counsel should have requested a supplemental jury instruction, which stated that a person who has the authority and permission to enter a dwelling is not guilty of first-degree home invasion.

Holmes first raised this claim in his motion for relief from judgment.  The trial court rejected his argument because it mistakenly thought that Holmes raised the same issue on direct appeal.  No matter, though.  The trial judge's misapprehension of the issue does not affect the merits here.

Holmes contends that defense counsel was ineffective for stipulating to the standard jury instruction on home invasion.  But he is not arguing that the instruction was incorrect.  Instead, he argues that the instruction was incomplete, and that defense counsel should have requested a supplemental jury instruction, stating that a person who has the authority and permission to enter a dwelling is not guilty of first-degree home invasion.

Although defense counsel did not request a supplemental instruction, she established the defense theory — that Holmes was not guilty because he was lawfully present in the victim's home —in other ways.  For example, during her cross-examination of the victim, she tried to show that Holmes's living arrangement at the time of the assault was like what it was when the couple lived with the victim's mother.  Trial Tr. (Mar. 26, 2012), ECF No. 14-5, PageID.559-561.  And during closing arguments, defense counsel said, "[I]f you find that Jay Holmes had a reasonable expectation that he had residency there or a right to be there, the home invasion charge fails."  Trial Tr. (Mar. 29, 2012), ECF No. 14-6, PageID.638.  "There are . . . 'countless ways to provide effective assistance in any given case,'" *Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689), and defense counsel's trial tactics did not amount to deficient performance.

-16-

Even if defense counsel's performance was deficient, there was substantial evidence that Holmes did not have the authority or permission to enter the victim's home before his assault on her.  The fact that he had to kick in the door to enter the home supports the victim's testimony that he was not living there at the time and did not have permission to enter her home without her permission.

There is no reasonable probability that the result of the trial would have been different had defense counsel requested, and been successful in obtaining, a jury instruction on authority and permission to enter a dwelling.  Therefore, even if defense counsel performed deficiently on this point, her conduct did not prejudice the defense, and Holmes is not entitled to relief on this claim.

D.

Holmes argues that the prosecutor deprived him of due process by knowingly and willingly using false testimony by the victim.  According to Holmes, the victim testified at the preliminary examination that he was free to come and go from her apartment, and the prosecutor should have corrected the victim at trial when she testified otherwise.  Holmes maintains that he stood a good chance of an acquittal without the allegedly false testimony.

On direct appeal, the Michigan Court of Appeals reviewed this claim for plain error, finding none.  *Holmes,* 2014 WL 198925, at *6.  That conclusion was reasonable.

Prosecutors "may not knowingly present false evidence."  *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate*, 386 U.S. 1 (1967)).  The Supreme Court has "made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  "The same result obtains when

-17-

the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

However, "[a] conviction obtained through the knowing use of perjured testimony must be set aside [only] if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Fields*, 763 F.3d at 462 (quoting *Giglio*, 405 U.S. at 154). To prove that the prosecutor's failure to correct false testimony violated the Due Process Clause, a habeas petitioner must show that (1) the statement was actually and "indisputably" false; (2) the prosecution knew it was false; and (3) the statement was material. *Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *see also Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019); *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012).

Holmes contends that the victim testified at the preliminary examination that he was free to come and go from her apartment before the assault. But that is not an accurate description of the testimony. Rather, the prosecutor asked the victim whether Holmes visited her at the apartment and how often or under what circumstances he visited her there. The victim responded that Holmes visited her at the apartment "[p]retty much when he wanted to come over at first." Prelim. Examination Tr. (Aug. 25, 2011), ECF No. 14-2, PageID.283. The prosecutor then asked, "Was he ever free to come and go at that time and by that I mean, just come in and let himself in as he wanted?" The victim answered, "He did not have a key to do that." *Ibid.*

The victim's testimony at the preliminary examination was not materially different from her trial testimony. She testified at trial that Holmes did not have his own key to her apartment, and when she first moved into the apartment, she would give Holmes permission to come inside to help her or to spend time with her and the couple's son. Trial Tr. (Mar. 26, 2012), ECF No. 14-5, PageID.459-463.

-18-

Holmes's perjury claim fails because he has not shown that the victim's testimony was actually and "indisputably" false or that the prosecutor knew the testimony was false. The state appellate court's conclusion that the prosecutor did not knowingly present false testimony or deprive Holmes of due process was objectively reasonable. Holmes has no right to relief on this claim.

E.

Holmes alleges next that the trial court constructively amended the Information (charging document) after the conclusion of testimony and closing arguments by giving a jury instruction that varied from the Information. Holmes asserts that the instruction changed the legal theory of the charge and that he had no opportunity to be heard on the altered language. The Michigan Court of Appeals rejected this claim on direct appeal, concluding that Holmes had notice of the charge against him, and even if he did not have notice that the charge would involve an intent to assault the victim, rather than the assault itself, he could not prove prejudice. *Holmes*, 2014 WL 198925, at *3.

The Sixth Circuit explained in *Lucas v. O'Dea*, 179 F.3d 412 (6th Cir. 1999), that "[a] modification at trial that acts to broaden the charge contained in an indictment constitutes reversible error." *Id*. at 416 (citing *Stirone v. United States,* 361 U.S. 212, 217–19 (1960)).

There are two types of modifications to indictments—amendments and variances. *See United States v. Ford,* 872 F.2d 1231, 1235 (6th Cir. 1989). The court in *Ford* elucidated the difference between them as follows:

> As *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Id.* (quoting *Gaither v. United States,* 413 F.2d 1061, 1071 (D.C. Cir. 1969)) (italics in original).

*Id*. at 416–17 (emphases in original).

A constructive amendment can occur when the defendant is charged with a crime, but the trial court gives a jury instruction that permits conviction of a different crime. *See id*. at 417 (explaining that "Lucas was charged with intentional murder, but the jury instructions permitted conviction for wanton murder"). Such a variance "is sufficiently material to constitute a constructive amendment," and "a constructive amendment is *per se* prejudicial error." *Ibid*. Although "the federal guarantee of charge by indictment does not apply to the states," "a state prisoner petitioning for habeas corpus relief has a due process right to be informed of the nature of the accusations against him." *Ibid*.

Holmes had notice of the first-degree home invasion charge and an opportunity to defend against the charge. The disputed issue is the difference between the charge described to the jury panel during *voir dire* and the final jury instructions at the close of the case. During *voir dire*, the trial court instructed the jurors that an element of first-degree home invasion would be established when, "while entering, present in, or exiting the dwelling the defendant *committed an assault* on someone legally present in the dwelling." Trial Tr. (Mar. 26, 2012), ECF No. 14-5, PageID.357 (emphasis added). At the close of the case, the trial court described the same element somewhat differently, stating that the prosecutor had to prove "that when the defendant broke and entered the dwelling[,] he *intended to commit an assault*." Trial Tr. (Mar. 29, 2012), ECF No. 14-6, PageID.665 (emphasis added). Holmes contends that the change in the instructions from "committed an assault" to "intended to commit an assault" altered the theory of the case, and if he had known what the trial court was going to say, he would have used a different strategy and cross-examined the witnesses differently by focusing on his intent before the assault.

-20-

*Martin v. Kassulke*, 970 F.2d 1539 (6th Cir. 1992), provided guidance on this issue.  There, the habeas petitioner's indictment charged her with being an accessory to a rape by forcible compulsion.  The trial court's jury instruction, however, permitted the jury to find the petitioner guilty if the rape occurred as a result of forcible compulsion *or* as a result of the victim being incapable of consent due to being physically helpless.  In other words, the indictment only charged rape by forcible compulsion, but the jury instructions mentioned the possibility that the victim was incapable of consent due to physical helplessness, a possibility not mentioned in the indictment. *Id*. at 1542.

The Sixth Circuit stated that "[t]he key question in determining whether [the] case involve[d] a variance or a constructive amendment [was] whether rape by forcible compulsion and rape due to physical helplessness should be seen as two alternative crimes or merely two alternative methods by which the one crime, rape, could have been committed." *Id.* at 1543.   The court believed that if the two theories were viewed as alternative methods, then the addition to the charge would be a variance; but if an expanded definition contained in the jury instructions created a new offense not found in the indictment, it would constitute an illegal constructive amendment. *See id*. at 1543-44.

The Sixth Circuit subscribed to the "one crime–two methods" approach taken by other courts and held that the difference between the indictment and the jury instruction in Martin's case was merely a permissible variance, not an actual amendment, because the statute under which Martin was charged provided only one offense with two different methods of commission. *Id*. at 1540, 1544-45.  The court also stated that the difference between the indictment and the instruction did not prevent Martin from presenting a full defense, that it was not unfair to convict Martin even

if the crime occurred under an alternative method, and that no prejudicial error occurred. *Id*. at 1546-1547.

This case is more like *Martin* than *Lucas*. The trial court's jury instruction at the close of Holmes's case did not describe a different crime. Instead, it described an alternative method by which the same crime, first-degree home invasion, could be committed. The difference between the Information and the jury instruction amounted to a variance, not an illegal constructive amendment.

Even if a constructive amendment occurred, no prejudice resulted. *Martin*, 970 F.2d at 1542. Holmes did not dispute that he assaulted the victim, and his defense did not depend on whether he committed an assault or intended to commit an assault. Instead, he maintained that he was lawfully present in the apartment.

And, as the Michigan Court of Appeals accurately pointed out, "[t]here was strong evidence that [Holmes] intended to assault the victim." *Holmes*, 2014 WL 198925, at *3. The victim testified that after Holmes kicked in her front door, he walked toward her "really fast" and "started punching [her] in the face." Trial Tr. (Mar. 26, 2012), ECF No. 14-5, PageID.477. In addition, as Holmes entered the home, and before he punched the victim in the face with his fist, he said, "How could you have him around my son?" *Id*. at PageID.477-478. This was substantial evidence that Holmes intended to assault the victim because another man had been in her apartment minutes earlier.

The jury instruction in Holmes's case did not permit the jury to convict Holmes of a crime that differed from the one described in the Information. And because the instruction merely described a different method of committing the charged crime, Holmes's right to be informed of the nature of the accusation against him was not violated. The strength of the evidence against

him undercuts any likelihood that Holmes may have been convicted of an offense other than the one charged in the Information. The state appellate court's conclusion that Holmes could not prove prejudice from the alleged error was objectively reasonable, and Holmes has no right to relief on his claim.

F.

Holmes also alleges that the trial court erred by failing to read a complete instruction on home invasion. According to Holmes, the trial court should have addressed the defense theory and explained to the jurors that if they believed he lived with the victim and was lawfully present in her home, they should find him not guilty of the home invasion charge.

The Michigan Court of Appeals, reviewing the claim for plain error, disagreed. It held that Holmes waived the issue and that, even if there was an error, the error was not outcome-determinative.

That decision reasonably applied federal law. As noted earlier, "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson*, 304 U.S. at 464, and Holmes, through defense counsel, expressed approval of the jury instructions read to the jury. Trial Tr. (Mar. 29, 2012), ECF No. 14-6, PageID.670. By approving the instructions, he waived his claim on home invasion and the lawful-presence defense. *See Tackett*, 956 F.3d at 371 (concluding that, because the petitioner affirmatively approved the jury instructions, he waived review of his claim about the instructions).

Even if Holmes had not waived the issue, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law," *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977), and on habeas review, an error is harmless unless it had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

-23-

The Michigan Court of Appeals correctly pointed out on review of Holmes's claim that

> [t]here was a substantial amount of testimony that defendant did not live in the home. The victim had ended her relationship with defendant a month earlier. He had to break down the door to enter. [His] name was not on the lease, he did not have a key, and the utility bills were in the victim's name.

*Holmes*, 2014 WL 198925, at *3. In light of that evidence, the Court does not have a grave doubt about whether the lack of a jury instruction on the defense that Holmes was lawfully present in the victim's home had a substantial and injurious effect or influence on the jury's verdict. The alleged error, therefore, was harmless.

G.

Holmes's final claim is that appellate counsel was ineffective because he was absent during oral arguments in Holmes's case. According to Holmes, oral arguments were a critical stage of the proceedings and were needed to supplement counsel's ten-page appellate brief.

Holmes first raised this issue in his motion for relief from judgment. The state trial court concluded that appellate counsel's failure to appear at oral arguments was not a proper basis for an ineffective assistance claim and that it did not equate with the failure of counsel to provide representation on appeal.

There is no United States Supreme Court case that addresses this issue. However, the proper standard for evaluating a claim about appellate counsel's effectiveness is the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Again, a habeas petitioner must show deficient performance and prejudice. *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019).

Holmes's appellate attorney did not forfeit Holmes's direct appeal. Nor did the appellate attorney fail to challenge the prosecution's case. He filed a timely brief in which he raised three claims, two of which Holmes raised in his initial habeas petition. Holmes's complaint is that the attorney failed to appear for oral arguments before the Michigan Court of Appeals. Oral

-24-

arguments, however, are not required in the Michigan Court of Appeals, *see* Mich. Ct. R. 7.214, and the record indicates that appellate counsel planned to attend oral arguments.  He was late and missed the proceeding because he was delayed by icy conditions on the highway.  *See* Mot. to Reschedule Oral Argument (ECF No. 9, PageID.200-201).

Furthermore, Holmes has not pointed to any Supreme Court decision that holds oral arguments on appeal are a critical stage of a criminal proceeding.  Therefore, Holmes's claim lacks merit, and the state trial court's determination that Holmes's claim was not a basis on which relief could be granted was objectively reasonable.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 28, 2022

-25-